UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GERALD EDWARDS, SR., | ) |
| Petitioner, | ) |
| vs. | ) No. 4:05CV2319 RWS/AGF |
| AL LUEBBERS, | ) |
| Respondent. | ) |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the petition of Missouri state prisoner Gerald Edwards, Sr., for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, the Court recommends that federal habeas relief be denied.

Petitioner was convicted by a jury on September 29, 1999, of one count of second-degree murder, two counts of first-degree assault, and three counts of armed criminal action. The charges arose out of the May 18, 1998 shooting death of a teenage boy and wounding by gunfire of two teenage girls on the streets of St. Louis, Missouri. Petitioner, who was 17 at the time of the crimes, was sentenced to fifteen years' imprisonment for one of the assault counts, and to five life sentences with the possibility of probation or parole for the remaining convictions, all sentences to run concurrently. The convictions

and sentences were affirmed on direct appeal. Petitioner's motion for state post-conviction relief was denied after an evidentiary hearing, and this denial was affirmed on appeal.

In the present action, filed on December 12, 2005, Petitioner asserts that his federal constitutional rights were violated in the following ways:

(1) Trial counsel rendered ineffective assistance in failing to object to the prosecutor's comment in opening statement that Petitioner would testify, and in not requesting a mistrial or an instruction that the jury disregard the comment;

(2) The trial court erred in overruling Petitioner's motion to suppress incriminating statements that he made during questioning by police;

(3) The prosecutor improperly displayed two weapons during trial, with no evidence connecting them to the crimes; and

(4) Trial counsel rendered ineffective assistance in failing to object to the prosecutor's comments during closing argument asking the jury to help the prosecutor stop gang shootings.

Respondent argues that habeas relief should be denied because Petitioner's third and fourth claims were procedurally defaulted in state court, and the Missouri courts' adjudication of Petitioner's remaining two claims was factually and legally reasonable.

## BACKGROUND

### Trial and Direct Appeal

On the morning of trial, defense counsel made an oral motion to suppress statements Petitioner had made to the police. The trial court stated that it would not hear

the motion before the case but would "take it with the case." Defense counsel objected to

that and the court noted the objection. (Resp. Ex. 8 at 13.) In her opening statement to

the jury, the prosecutor stated as follows:

> They arrested Mr. Edwards. They brought him down and questioned him. He made a statement which you will hear. You will hear the defendant in his own words talk about that he was the driver of the car, that Edward Harris had an AK-47, as he calls it, an assault rifle, that the other individual in the car, Jahmel Luster, had a handgun. And he will say that he was driving when this all occurred.
>
> Now as an excuse, he tells the police that he didn't know that they were going to shoot anybody even though they had those guns, and he didn't know even that they were shooting from the car. He tells the police that when he heard the shots, he thought that they were being shot at. Well, Ladies and Gentlemen, you will hear from the firearms examiner that when this gun goes off inside a car that you're driving, there is no way that you can mistake that this came from outside the car.
>
> He will also testify that when he was driving the car he went around twice, okay. When he went past them the first time, he was talking to someone else; and when they went past him the second time, that that's when they shot. And, when the police were questioning him he told the police where the gun was hidden, the rifle. The police found it exactly where he said it would be.

Id. at 256-57.

In affirming the denial of postconviction relief, the Missouri Court of Appeals

summarized the trial evidence as follows. This Court's review of the record shows that

this summary is accurate and fair:

> Viewed in the light most favorable to the verdict, the evidence adduced at Petitioner's trial established that, on May 18, 1998, [Petitioner] was driving in the Walnut Park neighborhood accompanied by Jahmel Luster and Edward Harris. At the time Harris was carrying an assault rifle and Luster possessed a .380 semiautomatic handgun. While driving by the corner of Wren and Thekla, the men saw a friend standing on the corner talking with Anthony Atkins.

The group returned to the corner a little while later and found Atkins and three female teenagers, Nickole Brandy, Regina Brooks and Sylvia Brooks standing and talking. [Petitioner] slowed his car as he approached a stop sign at the corner. At that time, Luster and Harris opened fire on Atkins and three females. After all shots were fired, Petitioner sped away from the scene.

Atkins suffered a fatal gunshot wound to the head. Brandy suffered from gunshot wounds to both of her legs and was hospitalized for four days. Regina Brooks suffered from a gunshot wound to her left leg and remained in the hospital for two to three days. Sylvia Brooks, Regina's sister, was not wounded.

Weeks later, police arrested Petitioner at his home on Harne Street. At the station, police read [Petitioner] his <u>Miranda</u> warnings, [Petitioner] waived the same and agreed to speak with police. Although [Petitioner] initially denied any involvement in the murder and assaults, he later gave an oral statement in which he implicated himself, Harris and Luster. Next, [Petitioner] agreed to give an audio-taped statement to the police the content of which mirrored his oral statement. When police asked [Petitioner] to submit to a computerized voice stress test to verify the truthfulness of his statement, [Petitioner] declined and admitted that he had not been completely truthful about the events.

[Petitioner] told the police that he knew where they could locate the assault rifle used in the shootings. Specifically, [Petitioner] said that he had instructed his girlfriend, Natasha, to "get rid of" the weapon. [Petitioner] next agreed to call Natasha from the station to get the location of the assault rifle. Thereafter, the police retrieved the rifle from the basement of a neighbor's house. [Petitioner] agreed to make a second audio-taped statement. In the second taped statement, [Petitioner] implicated himself further in the murder and assaults.

(Resp. Ex. P at 2-3.) To the above, the Court adds that the transcripts of Petitioner's two taped statements that were played to the jury open with Petitioner waiving each of his Miranda rights in turn.[1] (Resp. Ex. E.)

When the State offered Petitioner's statements into evidence, defense counsel objected. Petitioner did not testify at trial. At the close of all the evidence, the trial court stated that it had considered all of the evidence, and overruled Petitioner's motion to suppress his statements to the police. During closing argument, the prosecutor told the jury that Petitioner had shown no remorse for the crimes. She also asked the jury several times to help her "stop the insanity" of gang drive-by shootings and retaliation, and to "send a message to these people who are shooting at each other." (Resp. Ex. A at 448-73.) Defense counsel did not object to any of these comments.

**Direct Appeal**

On direct appeal, Petitioner challenged (1) the admission of the statements he made to the police on the ground that they were physically and mentally coerced, (2) the sufficiency of the evidence with regard to the element of intent as an accomplice to promote the crimes, (3) and the trial court's failure to sua sponte declare a mistrial or

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966), requires police to advise a criminal suspect of the following rights before a custodial interrogation: You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have a right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements.

instruct the jury to disregard the comments of the prosecutor made during closing argument about Petitioner's bad character and appealing to the jury to help stop gang activity. (Resp. Ex. F).

The Missouri Court of Appeals held that the trial court erred in failing to hold a hearing outside the presence of the jury on the issue of the voluntariness of Petitioner's statements to the police, and remanded the case for a full evidentiary hearing on the matter. At that hearing, held on April 20, 2001, police detective Bryan McGlynn testified to the following: He was one of the officers who took Petitioner into custody at approximately 11:30 p.m. on June 2, 1998, at Petitioner's home, for the crimes in question. McGlynn took Petitioner to the homicide office at the police station, told Petitioner of the ongoing investigation, orally advised Petitioner of his Miranda rights, and told Petitioner that the police wanted to talk to him about his involvement in the crimes. Petitioner agreed to make a statement and told McGlynn that he (Petitioner) was the driver and witnessed the shootings, but he also gave some information about the type of weapons that were used that was not consistent with the facts of the crimes. This statement took about 15 minutes to one-half hour. No one coerced Petitioner to make a statement. Petitioner then agreed to have his statement audiotaped and he signed a "warning and waiver" form at 2:48 a.m. on June 3, 1998. Petitioner was alone in the interview room from the time that he gave his first oral statement until he agreed to make a taped statement and signed the waiver form. At no time before agreeing to make the recorded statement did Petitioner ask for food "or anything else," nor did he ask

McGlynn to contact anyone in Petitioner's family. McGlynn then taped Petitioner's 15-minute statement, which was consistent with his prior statement. At the beginning of the recorded statement, McGlynn repeated Petitioner's <u>Miranda</u> rights and Petitioner indicated that he understood each one. The police then compared the statement with the facts of the case, leaving Petitioner alone in the interview room, during which time no one abused Petitioner in any way. McGlynn then asked Petitioner to submit to a voice stress analyzer to test the truthfulness of his statement, but Petitioner refused, stating that he had not been completely truthful and that he wanted to make a more truthful statement. Petitioner then told the police that he had stolen the murder weapon from the person who had used it in the crimes, and had hidden it in his girlfriend's house, across the street from his own house. He then called his girlfriend and told her that the police would be over for the weapon and that she should cooperate with them. The police transported Petitioner to his girlfriend's house and recovered the weapon. This was at about 3:05 a.m. No one forced Petitioner to make this second statement or to call his girlfriend. The police then took Petitioner back to the police station, arriving there at about 4:30 a.m. From when he was taken to his girlfriend's until he got back to the police station, Petitioner did not request to see any family members. Once back at the station, Petitioner agreed to make a second taped statement with the new information about the weapon. He again signed a warning and waiver form and indicated on the tape that he understood his rights. During the time that Petitioner was in McGlynn's custody,

Petitioner did not ask to make any phone calls. McGlynn could hear fatigue in Petitioner's voice when Petitioner made the second taped statement. (Resp. Ex. B 5-24 ).

At the hearing, Petitioner testified to the following: When the police took him from his house to the police station they did not tell him what they wanted him for, and he was handcuffed. Once in the interview room, he was handcuffed to a chair and the table. He asked to call his mother and was told that she couldn't help him right now. He was questioned by three officers including McGlynn and an officer named Crawford. Crawford grabbed his face and made him look at a chalk board on which the third officer had drawn stick figures who were in jail. Crawford asked Petitioner if he wanted to go to prison and if he knew what happened to people there, and stated that if he cooperated, things would be easier for him. McGlynn, who had been standing in the doorway, then told Crawford to calm down and that he (McGlynn) thought Petitioner wanted to cooperate. McGlynn "stopped Crawford from all the commotion that was going on in there," and told Petitioner that if he cooperated, he wouldn't have to worry about Crawford anymore, and that other witnesses to the crimes who had made statements had been released. Petitioner testified that he had hesitations about making a statement because his mother was not with him, and that he was first read his rights when the police were getting ready to put his statement on tape. He made the second taped statement because McGlynn told him that if he stated that a rifle found in Petitioner's car was the shooter's, Petitioner would not have to be worried about being charged. Petitioner told

the police "early on" that he did not want to be questioned, but the police did not listen to him. Id. at 52-64.

In an order dated June 4, 2001, the trial court summarized the hearing testimony, recognized that the State bore the burden of proving voluntariness, and cited the test for voluntariness as being "whether, under the totality of the circumstances, the defendant was deprived of his free choice to admit, deny or refuse to answer, and whether physical or psychological coercion was of such a degree that his will was overborne at the time of the statements." The court found that McGlynn was a credible witness, and that Petitioner's statements were given voluntarily without coercion. The court concluded as follows:

> [Petitioner] was fully advised of his rights prior to the making of the statements at issue and he understood such rights. There was no credible evidence presented that [Petitioner] was interrogated after advising the officers that he did not wish to speak, that [Petitioner]'s will was overborne through coercion or that he was so tired that he could not resist. The record also does not indicate that [Petitioner] suffered from any disability or an inability to understand his situation.

(Resp. Ex. D.)

The Missouri Court of Appeals concluded that the motion court's finding that Petitioner's statements were voluntary was supported by a preponderance of the evidence. The appellate court, accordingly, affirmed the judgment (of conviction) against Petitioner. (Resp. Ex. K.)

**State Postconviction Proceedings**

In a pro se motion for postconviction relief filed under Missouri Supreme Court Rule 29.15, Petitioner raised several grounds of ineffective assistance of his trial counsel, including the one claim pursued on appeal from the denial of postconviction relief - that counsel was ineffective for failing to object the prosecutor's comment during opening statement that Petitioner would testify, and failing to ask the trial court to disregard the comment, and/or move for a mistrial. (Resp. Ex. M at 3-38, 43-44.) On this claim, defense counsel testified at an evidentiary hearing held on July 23, 2004, that he had been a public defender for about ten years, and that in his opinion, if a prosecutor mentioned the defendant's right not to testify, an objection should be made by defense counsel. He further testified that he understood that an objection could be made at any time to a prosecutor's opening statement. Id. at 93.

The motion court denied Petitioner's motion for postconviction relief on all claims. With regard to the above claim, the court concluded as follows:

> The statement complained of was in the context of what was said by [Petitioner] in the previously recorded statement that was intended to be played, and was played for the jury. The court does not believe [Petitioner] could have suffered any prejudice from the statement because it is unlikely that the jury took the statement as a promise that [Petitioner] was going to testify live at trial. There was no other reference made in the presence of the jury regarding [Petitioner] testifying or not testifying at the trial.

Id. at 112-13.

In affirming the denial of postconviction relief, the state appellate court rejected Petitioner's argument that the prosecutor's comments in question constituted an improper

reference to Petitioner's right not to testify in that it promised the jury Petitioner's testimony at trial. The appellate court agreed with the motion court that, "[w]hen reviewed in context, the prosecutor's opening statement clearly refers to information that the jury would hear via the introduction of petitioner's recorded statements" and "merely foreshadowed the evidence she expected to present at trial . . ." The court went on to find that, in any event, defense counsel's testimony at the postconviction hearing clarified that the decision not to object to the prosecutor's opening statement was sound trial strategy. The court stated that trial counsel "testified that, in this case, he did not object because it was clear that the prosecutor was referring to recorded statements [Petitioner] gave to police when she said in her opening statement that the jury would hear from [Petitioner] during trial." (Resp. Ex. P.)

## DISCUSSION

**Procedural Default**

As noted above, Respondent argues that Petitioner's third and fourth claims (improper display of weapons and defense counsel's failure to object to closing argument, respectively) are not properly before this Court because they were procedurally defaulted in state court. Under the doctrine of procedural default, a state prisoner is generally barred from obtaining federal habeas relief on claims that were procedurally defaulted in state court, that is, claims that were not properly presented through "one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Wemark v. State, 322 F.3d 1018, 1020-21 (8th Cir. 2003). A Missouri

inmate procedurally defaults claims which should have been but were not raised on direct appeal or on appeal from the denial of a motion for post-conviction relief. Moore-El v. Luebbers, 446 F.3d 890, 897-98 (8th Cir. 2006) (holding that a Missouri inmate's failure to raise a claim on appeal from the denial of state post-conviction relief constitutes a procedural default of that claim); Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005) (same); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (same as to claims not raised on direct appeal); Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (stating that in Missouri, a claim must be presented at each step in the judicial process in state court to avoid procedural default).

Here, as Respondent argues, Petitioner did not present his third and fourth federal habeas claims to the Missouri Court of Appeals. These claims were thus defaulted in state court. A habeas petitioner can overcome the procedural bar to federal habeas review of a defaulted claim by demonstrating (1) both cause for the default and actual prejudice therefrom, or (2) that the failure to review the federal claim will result in a fundamental miscarriage of justice; the "miscarriage-of-justice" exception permits review of a defaulted claim where a constitutional violation has probably resulted in the conviction of one who, factually, is "actually innocent." House v. Bell, 126 S. Ct. 2064, 2076-77 (2006) (citing Schlup v. Delo, 513 U.S. 298, 321-24 (1995)). To show a "miscarriage of justice" in this context requires "new reliable evidence" that was not presented at trial and that makes it "more likely than not that no reasonable juror would have found petitioner

inmate procedurally defaults claims which should have been but were not raised on direct appeal or on appeal from the denial of a motion for post-conviction relief. Moore-El v. Luebbers, 446 F.3d 890, 897-98 (8th Cir. 2006) (holding that a Missouri inmate's failure to raise a claim on appeal from the denial of state post-conviction relief constitutes a procedural default of that claim); Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005) (same); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (same as to claims not raised on direct appeal); Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (stating that in Missouri, a claim must be presented at each step in the judicial process in state court to avoid procedural default).

Here, as Respondent argues, Petitioner did not present his third and fourth federal habeas claims to the Missouri Court of Appeals. These claims were thus defaulted in state court. A habeas petitioner can overcome the procedural bar to federal habeas review of a defaulted claim by demonstrating (1) both cause for the default and actual prejudice therefrom, or (2) that the failure to review the federal claim will result in a fundamental miscarriage of justice; the "miscarriage-of-justice" exception permits review of a defaulted claim where a constitutional violation has probably resulted in the conviction of one who, factually, is "actually innocent." House v. Bell, 126 S. Ct. 2064, 2076-77 (2006) (citing Schlup v. Delo, 513 U.S. 298, 321-24 (1995)). To show a "miscarriage of justice" in this context requires "new reliable evidence" that was not presented at trial and that makes it "more likely than not that no reasonable juror would have found petitioner

inmate procedurally defaults claims which should have been but were not raised on direct appeal or on appeal from the denial of a motion for post-conviction relief. Moore-El v. Luebbers, 446 F.3d 890, 897-98 (8th Cir. 2006) (holding that a Missouri inmate's failure to raise a claim on appeal from the denial of state post-conviction relief constitutes a procedural default of that claim); Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005) (same); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (same as to claims not raised on direct appeal); Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (stating that in Missouri, a claim must be presented at each step in the judicial process in state court to avoid procedural default).

Here, as Respondent argues, Petitioner did not present his third and fourth federal habeas claims to the Missouri Court of Appeals. These claims were thus defaulted in state court. A habeas petitioner can overcome the procedural bar to federal habeas review of a defaulted claim by demonstrating (1) both cause for the default and actual prejudice therefrom, or (2) that the failure to review the federal claim will result in a fundamental miscarriage of justice; the "miscarriage-of-justice" exception permits review of a defaulted claim where a constitutional violation has probably resulted in the conviction of one who, factually, is "actually innocent." House v. Bell, 126 S. Ct. 2064, 2076-77 (2006) (citing Schlup v. Delo, 513 U.S. 298, 321-24 (1995)). To show a "miscarriage of justice" in this context requires "new reliable evidence" that was not presented at trial and that makes it "more likely than not that no reasonable juror would have found petitioner

guilty beyond a reasonable doubt." Id.; see also Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006).

In his traverse, Petitioner does not assert a claim of actual innocence. Rather, Petitioner asserts that his third and fourth claims were raised in his "pro-se briefs, motion and anytime Petitions chance was available," but that he couldn't make his attorneys include the claims in their filings, and when he brought the claims up to counsel, he was told counsel would take care of it or that the claims had no merit. (Doc. #9) Ineffective assistance of direct appeal counsel can be cause to excuse a procedural default of a habeas claim, but this theory itself must not have been procedurally defaulted in state court. Edwards v. Carpenter, 529 U.S. 446, 453 (2000); Watts v. Norris, 356 F.3d 937, 941 (8th Cir. 2004). Here this standard was not met, as no claim of ineffective assistance of direct appeal counsel was presented to the state appellate court in the post-conviction proceedings.

In addition, as there is no constitutional right to counsel in state post-conviction proceedings, the ineffective assistance of post-conviction counsel, either in the motion court or on appeal, cannot constitute cause to excuse a procedural default. Interiano v. Dormire, 471 F.3d 854, 857 (8th Cir. 2006) (holding that Missouri prisoner's claim raised in his pro se Rule 29.15 motion but not pursued by appointed counsel or raised on appeal from the denial of the motion was defaulted) (citing Osborne, 411 F.3d at 919-20); Winfield v. Roper, 460 F.3d 1026, 1034 (8th Cir. 2006). Thus, this Court is barred from considering the merits of Petitioner's claims other than his claims regarding the

voluntariness of his statements to the police, and the effectiveness of counsel in failing to object to the prosecutor's comment in her opening statement, allegedly implicating Petitioner's constitutional right not to testify.

**Standard of Review for Claims Properly before the Court**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" Price v. Vincent, 538 U.S. 634, 639-40 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413; Linehan v. Milczark, 315 F.3d 920, 924-25 (8th Cir. 2003).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court]'s decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting Williams, 529 U.S. at 412). The state court's decision "must be objectively unreasonable, and not merely incorrect," for a federal habeas court to grant relief. Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008). The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." Id.; § 2254(e)(1).

**Admission into Evidence of Petitioner's Statements to the Police**

Petitioner claims that the trial court violated his constitutional rights by overruling Petitioner's motion to suppress the statements he made to the police. In support of this claim, Petitioner points to the facts that he was 17 years old at the time he was questioned by the police, that he was handcuffed to a chair for over three hours, and that McGlynn acknowledged that he heard fatigue in Petitioner's voice. Petitioner also asserts that he was precluded from contacting any family members, and that an interrogating officer said he would contact Petitioner's mother, but did not do so until after Petitioner made his first statement.

Admission into evidence of a criminal defendant's incriminating statements to police offends due process if the statements were the product of police coercion such that

- 15 -

the defendant's "will [was] overborne and his capacity for self-determination critically impaired." Culombe v. Conn., 367 U.S. 568, 602 (1961); see also United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002); Bracken v. Dormire, 247 F.3d 699, 703 (8th Cir. 2001). In Miranda, the Supreme Court held that police officers must inform a suspect of his Fifth Amendment privilege against self-incrimination prior to initiating a custodial interrogation. A suspect may then waive these rights provided that the waiver is knowing, voluntary, and intelligent. Miranda, 384 U.S. at 444. A waiver is "knowing and intelligent" where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is "voluntary" where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception. Moran v. Burbine, 475 U.S. 412, 421 (1986); Syslo, 303 F.3d at 865.

"Although the requirement that a Miranda warning be given does not dispense with the voluntariness inquiry, cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001) (citation omitted). A federal habeas court reviews de novo a state court's legal conclusion that a Miranda waiver was valid; a state court's finding that a petitioner understood Miranda warnings is a presumptively correct factual finding for purposes of federal habeas review, where the finding was based on the state court's evaluation of witnesses' testimony. Thai v. Mapes, 412 F.3d 970, 976-77 (8th Cir. 2005).

Here, the motion court's findings are supported by the testimony at the April 20, 2001, hearing and the transcripts of Petitioner's two taped statements. Petitioner does not point to clear and convincing evidence that contradicts the state court's relevant findings of fact, and the facts that were found support the conclusion that both the Miranda waiver and the statements themselves were knowing and voluntary. See Perry v. Kemna, 356 F.3d 880, 887 (8th Cir. 2004) (holding that the transcripts from habeas petitioner's interviews with police when he was 15 years old supported state court's finding that he was informed of his rights and was afforded appropriate warnings before the beginning of each interview, and that he affirmatively indicated his understanding of those rights); Simmons, 235 F.3d at 1132 (holding that the state courts reasonably rejected a petitioner's claim that his statements to police were involuntary because he was 17 years old at the time, he was below average intelligence, he was interrogated by three police officers for over two hours, law enforcement officials raised their voices while in close proximity to him, misrepresented to him that his accomplice was confessing, and reminded him that he was facing the death penalty while also telling him things would go better for him if he told the truth).

In sum, the Missouri courts' adjudication of this claim involved neither an unreasonable application of federal law as determined by the Supreme Court of the United States nor an unreasonable determination of fact and, accordingly, habeas relief should be denied on this claim. See Gingras v. Weber, 543 F.3d 1001, 1003-04 (8th Cir. 2008).

**Defense Counsel's Failure to Object to the Prosecutor's Opening Statement**

Petitioner's next claim under review is that defense counsel was constitutionally ineffective for failing to object to the prosecutor's references in her opening statement to Petitioner's "testimony" at trial. Two constitutional rights are implicated in this claim - Petitioner's Sixth Amendment right to the effective assistance of counsel and his Fifth Amendment right not to testify at trial. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

A criminal defendant's Fifth Amendment right against compulsory self-incrimination forbids a prosecutor from commenting on an accused's failure to take the stand and testify on his own behalf. Griffin v. California, 380 U.S. 609, 615 (1965). "Further, '[i]ndirect comments constitute a constitutional violation if they manifest the prosecutor's intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify.'" Robinson v. Crist, 278 F.3d 862, 866 (8th Cir. 2002) (quoting Graham v. Dormire, 212 F.3d 437, 439 (8th Cir. 2000)). The prosecutor's comments must be examined in context. Graham, 212 F.3d at 439.

Here the state courts determined that taken in context, the challenged statements by the prosecutor would have been understood by the jury as relating to what they were going

to hear in the taped statements that Petitioner made to the police. This Court does not believe that this determination was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. While the prosecutor did state that Petitioner "will also testify that . . . , " viewing the opening statement as a whole convinces this Court that the state courts' interpretation of the record was reasonable. Under this reading, counsel's failure to object cannot be considered to be ineffective assistance.

The state appellate court's alternate ground for rejecting Petitioner's claim, i.e., defense counsel's testimony at the postconviction hearing that he made a strategic decision not to object to the prosecutor's opening statement as a matter of trial strategy, is not supported by the record. This Court's review of the postconviction hearing of July 23, 2004, does not reveal any such testimony by counsel. Nevertheless, the state courts' primary reason for finding Petitioner's claim to be without merit was not legally or factually unreasonable. Habeas relief on this claim is therefore precluded.

## **CONCLUSION**

Petitioner is not entitled to federal habeas relief. The Court does not believe that this is a case in which "reasonable jurists" might find the Court's procedural or substantive decisions "debatable or wrong," for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). See Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (explaining standard for issuing Certificate of Appealability) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)); Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006) (same).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of Gerald Edwards, Sr., for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability should not issue in this case.

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of February, 2009.